If it may please the Court, I'm Tom Steenson from the Plaintiffs. I'd like to reserve three minutes for rebuttal if it's permissible. As a couple of housecleaning matters, counsel for the defendants correctly pointed out by letter to the Court a couple weeks ago that another panel has ruled on the sovereign immunity issue with respect to the Religious Freedom of Restoration Act. As a result, although we don't agree with the ruling, as a result of that ruling that the government had not waived sovereign immunity for purposes of RFRA, that I think takes care of that issue before the Court this morning as well as the related qualified immunity issue that was also briefed. On another housecleaning matter, after reviewing the record, I think we now are in agreement with the government as to David Beebe's liability under Bivens. I think the record is probably lacking in evidence of his specific intent to discriminate on the basis of Ms. Wong's religious practices and her religion. So I will not be addressing that claim. What remains, then, is the issue of the timeliness of the Federal Tort Claim Act claim for Ms. Wong alone. And just to make it clear, Ms. Wong, being a religious leader, as she was, was arrested, detained, and ultimately removed, and the conditions of her confinement before the removal as a matter of negligence is the basis for that claim, just to put the claim in context. Mr. Steenson, can you help me? The Supreme Court recently decided that the case, the name of which escapes me, on jail strip searches, basically holding, as our in-bank decision had held in a brilliantly crafted decision by Judge Acuda, that there is no constitutional violation for strip searches. What does that do to the underlying basis of your Federal tort claim? I don't think it affects the question of negligence. I think the constitutional standard is a different standard than the question of negligence, and the question of negligence. But Section 1983 doesn't recognize negligence claims. So the only thing you've got – well, I'm sorry. So I guess you could, assuming that there is waiver of sovereign immunity, you might have a claim for negligence, I guess, under the Federal tort claim. The district court has so ruled. And that issue is not before the Court as to the viability of that claim on the merits, both as to the strip search and the lack of vegetarian meals, which were an important part of her religious practices. Quite frankly, this is the third time in the course of this appellate litigation, three times now, before different panels, that there have been arguably changes in the law and adverse decisions out of the Ninth Circuit affecting substantial claims in this case. The most recent case has been pending for how many years? It was filed in May of 2001. 2001. So it's 12 years old? Yes. The government took two interlocutory appeals. We won one, but it was a hollow victory because of qualified immunity on the question of Fifth Amendment discrimination. We lost the strip search claim because of the Bull decision. And now we're faced with the hurdle of the Marley decision, which, despite what Judge Jones said, his opinion granting reconsideration and dismissing on timeliness grounds, that there had been no change in the law in citing a number of cases. At the time that we were faced with the decision in 2001, late 2001, as to how to make the complaint, to obtain permission of the Court, as was required, to add the Federal tort claim to that claim, we believed that tolling of one form or another applied. In any event, we filed the motion to amend the complaint, attached the proposed amended complaint in November of 2001, asked permission to file that as soon as the time had elapsed for doing so, which was about three weeks later, about two weeks after that time period, the government issued the denial of the administrative claim, taking the position that the plaintiffs or the claimants had exercised their option to pursue the matter in court. Could I ask you a question about the magistrate judge? The magistrate judge granted you leave to file an amended complaint on April 5th. And then in looking at the 28 U.S.C. 636, it says the magistrate can grant such a motion and the district court's local rules so allow as well, and yet it doesn't appear that anyone saw or understood that the magistrate judge had already issued you the permission to file that motion. Why doesn't that eliminate, you know, assuming that that's correct and the magistrate judge had the authority, why doesn't that eliminate the equitable argument? I think the magistrate judge had the authority to issue the order, but I think it's also subject to the process by which if one party objects, as the government did, it then has to be reviewed by the Article III judge, which Judge Jones then did, and did not issue his decision over until late June of 2002, subsequent to the technical running of the 6-month period. So we were simply in a position where we could not, at least my understanding of the procedure, could not have filed the amended complaint, despite the fact that there had been the administrative claim denial letter, despite the fact we'd filed the motion timely to seek permission, and our hands were tied. Well, the hands were tied. Why didn't you just file a separate lawsuit? Nothing technically prevented us from doing that. Your hands weren't tied to prevent you from doing that. Well, yes and no. I think that the decision in Velazquez, which the government also pointed out in a letter brief, is important because what it recognizes, slightly different facts, but it also involved a Bivens claim, and then the attempt to get in an FTCA claim, and the question of timeliness, what the government was arguing in that case is that the plaintiff should have filed a separate lawsuit, and I think the Ninth Circuit was, the panel in that case was pretty clear in admonishing the government that that is not the way that we efficiently run our court system. It would make no sense to file a second lawsuit, pay the filing fee, and then no doubt consolidate, because they arose out of the same common nucleus of facts, both in the Velazquez case as in this case. And so given that it made no sense, under those circumstances, I don't know what label you attach to it, but some kind of fundamental fairness dictates in this case that because of the court system, and I'm not faulting either the magistrate judge or Judge Jones, but a court system that took over seven months to grant the plaintiff's claim, to somehow bar Ms. Wong having her day in court on her claims just seems, you know, fundamentally unfair. The problem, though, is with the law, and of course, this case had not been decided at that point, so I'm not faulting you for it. The problem is that we now know that that time period is jurisdictional, and when it lapses, the court is without power to hear the claim. Under the current ruling, at least by that panel, subject to en banc, either in this case or in some other case, intervening, as the Court probably is aware, there's a couple of different circuits that go the other direction. The Supreme Court is going to have to resolve it. The Supreme Court has not addressed the issue. In fact, there's some suggestion, I think, in some of the Supreme Court decisions that it would go the other direction. But I don't know. So assuming that we remain bound by Marley, why doesn't your relation back doctrine how does there's nothing in the Ninth Circuit that would prevent the court from saying, well, it relates back for purposes of avoiding the statute of limitation bar, but doesn't relate back for purposes of prematurity. We don't have any rule against it the way the Fifth Circuit does, do we? No, there isn't. And the point I was going to make, besides the point that Valesquez emphasizes that it's a bad way to run the train, to have two lawsuits filed and have to consolidate, and particularly, even Valesquez didn't have these facts, particularly where the plaintiff has made a good faith effort to get the permission of the court to do so. But the other point about Valesquez is what Your Honor has raised, is that the relation back doctrine in and of itself can, I think, operate under the particular facts of this case, and they're peculiar, but the facts of this case to allow, absent the holding of Marley, grounds to allow the claim to proceed on the basis of Marley. Marley has nothing to do with the relation back, right? Nothing at all. Now, on relation back, what did district court say about it? It really wasn't addressed. Why not? You didn't make that argument? I don't recall making the argument. Because I believe it because I couldn't find anything in the district court or the magistrate judge's orders about relation back. It wasn't the basis of a ruling, and I don't recall making much of an argument on it. I don't recall any argument, actually, on it. Without going back and checking, I can't. Well, if you didn't – well, let me ask this question. If you didn't raise it in the district court, you think you've waived it? I'm sorry, Your Honor. You think you've waived that argument because you never argued it to the district court, although I saw nothing in the government's brief either that, you know, suggested waiver of the relation back. They have not. They briefed their position on it, and they have not argued waiver. And, frankly, it just didn't seem necessary under the circumstances, as both the magistrate judge and then adopted by Judge Jones found, similar to Velasquez, it made no sense to require anything but the plaintiff to wait for the order allowing the amendment of the pleadings and the amended complaint to be filed, which is exactly what we did. But if we came out that way, assuming that we don't find it's waived or the government waived waiver, that would create a circuit split with the Fifth Circuit. Is that right, with Reynolds? I don't know the answer to that, Your Honor. I'm sorry. Well, we'll ask Ms. Murphy about that. Unless there's further questions. I don't have – you want to save some time for rebuttal? Yes, three minutes. Okay. Absolutely. Thank you. Sure. Ms. Murphy. May it please the Court, Anne Murphy, for Mr. Beebe and for the government. And on behalf of Mr. Beebe, who sued individually, I would just like to clarify that my understanding is that all the claims against him have now been conceded. So on that, we should move ahead to the FTCA filing deadline issue. Your Honor, the reason that it's time-barred, that the FTCA claim is time-barred is that under the FTCA, there's a six-month period in between administration exhaustion and the lapse of the period during which the action must be begun. And absolutely nothing on the timeline in this case can be construed reasonably as the filing, the beginning of the FTCA action within that period. There are two – What's wrong with the relation back doctrine? Haven't we held that that can work for purposes of FTCA claims, or certainly the Fifth Circuit has? Right. But, Your Honor, there's nothing for it to relate back to. It would have to relate back to something that was filed within the relevant period. Here, there's a – Within what period? Before exhaustion. It has to be filed, relate back to something that was filed after administrative exhaustion. No, see, I think that's the argument Judge Acuta's addressing. Are you familiar with the case of Valadez-Lopez v. Chertoff? Yes, Your Honor, absolutely. We sent it in. Now, doesn't that say that, you know, you can amend – a plaintiff can amend an existing complaint to state an FTCA claim? Even though it violates the rule you're talking about? Well, there's two differences between Valadez-Lopez in this case. The first humongous difference and the dispositive difference here is that in Valadez-Lopez, the claim adding the FTCA claim was timely filed. It was filed within six months after – in the period six months between exhaustion and the ending of the deadline. But the language in there says it doesn't – we're not going to say that it – under the relation back doctrine, it's premature. We don't see Rule 15c operating to make the claim premature. So you say, well, there's factual distinction, but when I look at Rule 15, I say, well, will it relate back for purposes of prematurity? And Valadez seems to say no. No, Your Honor, what Valadez-Lopez says, it says forget about relation back. It quite clearly says that that isn't relevant here. What happens is the second complaint takes the place of the earlier complaint, and it's as if the earlier complaint never existed. So in Valadez-Lopez, that was all fine because you had exhaustion and then you had the filing of complaint by amendment, and everything worked very nicely in Valadez-Lopez. Here, that didn't happen. I'm not following that. So you're saying that – Ms. Kagan, can you indulge me? I'm just going to grab my copy of Valadez-Lopez. Ms. Kagan, that would be great. All right. I have the slip opinion. I'm afraid since that's what we sent to you. But at page 16,398, it says – Page what? I only have the slip opinion. That's okay. 16,398. 16,398. It's the part talking about Rule 15c. And it says, So if we apply that reasoning here, we look at the complaint that was filed on August 13, 2002, and it's way out of time. So that's not going to help plaintiff under Valadez-Lopez. Under Valadez-Lopez, even if the complaint related back, it would then be too early, because McNeil is very clear that the complaint filed by the plaintiff is not going  And so the complaint filed before an exhaustive administrative round is not enough. But Valadez-Lopez says that the – it's not premature just because it relates back. Are you saying that that's not? Because that was the argument they were making. They were saying, alternatively, the government cites 15c for the proposition that Valadez-Lopez's amended complaint asserting the FTCA claim relates back to the date of filing of his original complaint, at which point he had not yet exhausted administrative remedies. In other words, it was premature. And then the panel says, no, that's not the case, because Rule 15c focuses only on the statute of limitations. Right. But what the panel says is, I mean, it's true that you rejected the argument in that case. I'm not here to say that. But that doesn't mean that the underlying point isn't correct, that if you want to relate back, it relates back to something that's premature. What the Court here said was, Rule 15c and Relation Back are irrelevant. You get the new complaint, you knock out the old complaint, and there's your new complaint. And if you do that in this case, Your Honor, what you end up with is a complaint that's filed too late. I don't understand how the complaint in this case about the new complaint was filed within the appropriate statute of limitations period, that it wasn't barred by the statute of limitations, and the claim of the government was it's too early. That's how I read your brief. But, Your Honor, under the plaintiff, I mean, it can't be that it's no prematurity argument if it relates back. Because if you look at Rule 15, it says Rule 15c says Relation Back, and it says Relation Back to the date of the original pleading. And under McNeil, it doesn't validate, as Lopez says, but only for purposes of the statute of limitations. Now, Your Honor, I don't think you can wipe out an entire Supreme Court decision of Federal Rule of Civil Procedure by rejecting a government argument in another case that wasn't really directly on point here. You keep referring to McNeil, but this is what Valdez-Lopez says about McNeil. It says, and I quote, McNeil does not control the outcome here where Valdez-Lopez invoked the Federal court's jurisdiction under the FDCA in his amended complaint after he exhausted his administrative remedies. Right, Your Honor. We think that's the other difference. Well, it is the other difference between Valdez-Lopez in this case. So you can see that point, McNeil doesn't control here. It's not directly concluding, but neither is Valdez-Lopez. We're in a middle ground here. Valdez-Lopez, the plaintiff only asserted Bivens claims and there were no FTCA claims. So the Bivens claims are going forward, he exhausts and he institutes the FTCA claim by amendment. Valdez-Lopez holds that's fine. McNeil says if you have already asserted the jurisdiction under an FTCA claim before exhaustion, that's no good. And what we have here in this case is a kind of middle ground where there were claims against the United States. There's a claim for declaratory relief. You mean under the RFRA or under what? Under the RFRA. There's a RFRA claim and also a declaratory judgment claim, but no FTCA claim. So we kind of have claims against the United States that are not FTCA claims. I'm not here to make any specific argument on that point, just to say that it is a difference. Because in our view, it's dispositive that there was nothing, no complaint was filed within that period. And, Your Honor, you are completely correct, even accepting under Valdez-Lopez that as a general matter, it's not efficient to have a separate course of action filed to add an FTCA claim within the period. Nonetheless, if you have litigation going on and there are deadlines at issue and the deadlines are jurisdictional, even if plaintiffs thought it wasn't jurisdictional, certainly they might have worried about whether it was jurisdictional, they could definitely have filed a separate complaint just under that circumstance as the deadlines got to the end. So it's not as though plaintiffs were entirely helpless to resolve this difficult issue. Breyer. Mr. Murphy, I hope this question is not going to completely confuse the issue, but it seems to me that if the district court had acted more promptly, let's say that Judge Jones had waited until after the expiration of the 180-day period and then granted the pending motion before the next period expired, that it would be proper with the permission of the district court to amend the complaint to add an FTCA claim.  During the period? During the period after. In other words, you're arguing that the filing was premature because the administrative 180-day period had not been exhausted. I don't think Mr. Steenson is disputing that. He agreed with that. He agreed with that in his brief. But what he did was to file a motion that essentially says, don't approve my amendment until after that period has expired. Right. Right? Right. But outside counsel's control, the district court waited seven months, and by the time Judge Jones finally granted the motion, we now know he was without jurisdiction to do that because the court waited too long, which is what prompted my question to Mr. Steenson. If you find yourself in that box, you can do one of two things. You can draft a very politely worded letter to Judge Jones saying, would you please rule on my pending motion before I'm knocked out of court on jurisdictional grounds, or you can file a separate lawsuit, which he agrees, for whatever reason, he did not do. No, that's right. And I mean, that's exactly what happened here. All right. So can you answer my question then? Would you agree that had Judge Jones acted in a more timely fashion, no pun intended, that Mr. Steenson would have then had a complaint that was amended within the statutory time period, and the lawsuit could have proceeded on the federal court claim? Yes, if the complaint had been amended within that magic six-month period. And in fact, here, another reason Valdez-Lopez is only peripherally relevant here is here, the district court did allow them to file the FDCA claim by amending the complaint. And that's not the big issue. That's not the reason that it was dismissed. The reason it was dismissed was because nothing happened during the time period. And as you point out, even though there was some district court delay, it was a Second Amendment complaint. As plaintiffs knew, they had to get leave of court to file it. The district court had to act. And they could have protected themselves either, as you say, by moving for expedition in the district court or by filing the separate complaint. And neither of those things happened. And these other arguments are really basically equitable arguments that are not valid under Marley, now that we know the period is jurisdictional. Well, I mean, there's a circuit split on that. That's great, but you're right. This Court has decided that. But you can't say, you know, one line of cases controls over the other line, can you, in our circuit? Well, in this circuit, Marley is controlling. Why is it controlling? It's only another three-judge opinion. What about Alvarez-McChain? Your Honor, it's Marley is controlling, and Marley said Alvarez-McChain. Well, why did you change that? And our hearing on Barth is denied. What's your authority for saying that Marley is controlling? It's a published decision of this Court. Well, so is Alvarez-McChain that says there's equitable tolling. So how do you choose one over the other? Because the Court in Marley distinguished Alvarez-McChain and explained why, in light of the proceedings in there. All right. Now, suppose we as a three-judge panel say, well, Marley was wrong. It's obvious Alvarez-McChain was correct, and there is equitable tolling. Does that mean that starts controlling then? Your Honor, I'm sure you're going to follow Marley as the most recent published opinion of this Court. Well, is that true? The most recent case controls? Well, rehearing on Barth was denied in Marley, and there was a poll of the judges. So, Your Honor, Marley is controlling law, and until the Supreme Court says something otherwise or Your Honors go on bank, it will be controlled. We'll have to sort that out if it becomes a problem. But let me get back to a threshold issue on this relation back. Now, as I suggested in questioning your opponent, in my reading of the record, the plaintiff didn't raise relation back in the district court, but on the other hand, he raised it on appeal, and you didn't argue that he's waived that argument, and you just replied on the merits. Now, Judge Yakuta says we sometimes call that a waiver of a waiver. You agree that's a correct reading of the record? No, Your Honor. I think we argued that it couldn't relate back because it was premature. I know that, but I mean, that's an argument on the merits. You're not saying that he can't make the relation back argument because he waived it by not raising it in the district court. That's not your argument, is it? No, Your Honor. We didn't. We actually answered the argument affirmatively in our brief. You're just saying he's wrong on that argument. Absolutely. He's wrong. It can't relate back, both because Valadez-Lopez says it doesn't and because the rule is very clear about what time the complaint relates back to, and McNeil is very clear about it. Ms. Murphy, I don't know if you're familiar with the Supreme Court's AEDPA decision in Maylees v. Felix, the 2005 decision. I can't say I am, Your Honor. Well, in that case, the Supreme Court allowed relation back under Rule 15c under the AEDPA statute, which has very strict statute of limitations, 365 days, and did indicate that relation back under 15c would be appropriate where the plaintiff named the wrong party. That's different. The special thing about the FTCA, Your Honor, that makes this so difficult is that there are deadlines at the beginning and deadlines at the end. I mean, often there will be like a statute of limitations issue and you can relate back and it doesn't matter what time period you're relating back to. But here it does matter because if the complaint is filed before exhaustion, you can't relate back to that complaint unless, as in Valadez-Lopez, it's a Bivens action, it hasn't named the United States, it hasn't invoked the jurisdiction of the court over the FTCA claim under the FTCA. But here, none of those things are going to help because you've got a double, you know, a double preclusion area with just a six-month period in the middle. But isn't this the same? And I probably should have issued an order asking you both to be prepared to address this argument, but I'm trying to understand if the government was on notice because when B.B. was served with the original complaint, it can't argue that it didn't know the grounds for the Federal tort claim at the time the lawsuit was filed. That's not the issue. And McNeil as well. I mean, it's not. They're very rigid, specific rules. And what the courts have said is these rules are not designed to, you know, necessarily produce complete justice in every individual case. But when you look at the global mass of the cases, so many of them, and for efficiency purposes, it's important, as McNeil said, to channel everything into the agencies first for settlement purposes. And the courts have been very strict about these rules, including, I'm afraid, Marley. I mean, it's, you know, it's jurisdictional, there are no limits. And even McNeil itself was a pro se plaintiff. And yet the courts said these overall global efficiencies are much better developed by having people adhere strictly to the rules in each case. Do Your Honors have no further questions? No. Thank you. I don't really have any further comments unless there's questions you'd like me to address. I don't have any. I don't either. Okay. We'll try and puzzle our way through this. The case is submitted. Thank you both for the argument. We will stand in recess until tomorrow morning.
judges: Tashima, Tallman, Ikuta